HENRY H. HEILEMANN, PLAINTIFF, v. HANNAH M. CLOWNEY, DEFENDANT.

Argued November 10, 1916—Decided February 20, 1917.

1. A return that a summons was served by leaving it at defendant's "residence" is insufficient.

2. A summons is not lawfully served by slipping a copy thereof under the locked entrance door of a building leading into a hall, which is used to communicate both with a business establishment and a stairway to defendant's suite of apartments, shut off by its own entrance door.

3. Whether such summons could be lawfully served by delivery to defendant's son, living with her in said apartment and about to enter the building from the street, *quære*.

4. The abolition of a return day in the summons brought about by the Practice act of 1912, and the requirement that summons shall be served "forthwith" (*Pamph. L.* 1912, *p.* 468), have done away with the practice of enlarging the return day in cases when prompt service cannot be made or defective service has been made; but have not deprived plaintiffs of the right to have lawful service made on defendants on the same principles that led to an extension of the return day under the former practice.

On rule to show cause why service of summons should not be set aside and cross-motion to permit issue and service of new summons.

Before Justices GARRISON, PARKER and BERGEN.

For the plaintiff, *Garrison & Voorhees.*

For the defendant, *Clarence L. Cole* (*Lee F. Washington* on the brief).

The opinion of the court was delivered by

PARKER, J. The requirement of the statute of 1903 was that a copy of the summons "shall be served on the defendant in person at least two days before its return or left at his usual place of abode at least six days before its return." *Practice act* 1903, § 52; *Comp. Stat., p.* 4067. By an amendment

of 1912 (*Pamph. L., p.* 468), no doubt, in view of the Practice act of that year, and the rules and forms accompanying the same, wherein return days are eliminated from writs of summons, the words "at least two (or six) days before its return" are struck out, and the clause reads: "A copy whereof shall be served on the defendant in person, or left at his usual place of abode. Said service shall be made forthwith after the process is delivered to the sheriff or other officer for service." No personal service was made and the question is whether there was valid substituted service.

The points made by defendant are these:

1. That the return fails to state that service was made "at" the defendant's "usual place of abode."

2. That such service was not in fact made.

3. That return was not made within legal time.

The testimony shows that at the time of the attempted service defendant lived at 167 St. James Place, Atlantic City, in a building which has a business front on the elevated boardwalk, and an entrance door opening on an inclined ramp leading from the street level of St. James Place to the boardwalk. The basement of the building, on the street level, was used as a workshop and storeroom by a rolling chair concern; the main floor, opening on the boardwalk and the ramp, as the place of business of the same concern; and the floor above, reached by the doorway on St. James Place through a hall connecting with the rolling chair office and up a stairway separate from the rolling chair office, as the living apartments of the defendant and her family. No one else lived in the building. The evidence satisfies us that this apartment was her "usual place of abode" in the contemplation of the statute. She had no other place of abode, although at this period much of her time was spent at a local hospital in attendance on a sick son. At the time when the sheriff's deputy appeared with the summons, there was no one in the living apartments, and the side door on St. James Place was locked. Another son of defendant, named Frank Clowney, who had just finished bathing in the ocean, was returning to the apartment in his wet bathing clothes when the sheriff's officer, learning his

identity, asked for his mother and was told she was not at home. The officer tried to hand Clowney the papers outside the building, but he refused them, and the officer put the papers under the side door opening on the ramp. Clowney, according to his testimony, tried to enter by that door after the officer had gone, and found it locked. No one answering the bell, he obtained access through the basement and thence to the hall and so upstairs. Later on he picked up the paper and gave it to his mother's attorney without showing it to her.

The return was not made until over a month after the attempted service, and several days after the depositions were taken under this rule. It reads as follows:

"Duly served within summons and complaint August 21st, 1916, on the defendant, Hannah M. Clowney, at 167 St. James Place, Atlantic City, New Jersey, the defendant locking herself in the house, and refused to receive the writ, and the son, who is above the age of fourteen, also refusing to receive the writ, I placed a copy under the door, in the presence of the said son; the place service was made was the residence of the defendant at the time service was made."

It is quite clear that the return is defective in failing to state that service was made at defendant's usual place of abode. *Mygatt* v. *Coe*, 63 *N. J. L.* 510.

Assuming that the return may be amended to conform to the facts, the question whether service was actually made "at" defendant's "usual place of abode" presents more difficulty. The point mainly urged is that the word "at" is not satisfied by placing the writ under the locked entrance door of a hallway leading either to a business establishment on the one hand, or, on the other, to a stairway in turn leading to defendant's apartment which had its own door, also locked. If the building had contained several apartments, occupied by several families, and the writ had been slipped under the front door of a common hallway, it could not be claimed that effective service was made; nor in all probability if it were handed to an attendant at the general entrance. *Fitzgerald* v. *Salentine*, 10 *Met.* 436. In the case at bar, the writ might

well have been picked up by some employe of the rolling chair concern using that doorway, and never have reached its destination at all. We think the point is well taken.

In so ruling, we do not wish to be understood as sanctioning the practice of slipping a writ under a door, or tossing it into an open window, or otherwise physically "leaving" it at defendant's usual place of abode without delivering it to some person thereat. While not deciding the point, we know of no case in which such practice has been recognized in the absence of a statute permitting the affixing of the writ to the front door, or the like. The universal practice in this state has been to deliver it on the premises to some member of defendant's family who is *sui juris*. This is the express requirement of the Justice Court act and District Court act. *Comp. Stat.*, *p.* 1966, § 45; *Comp. Stat.*, *p.* 2985, § 16.

These considerations make it unnecessary to dispose of the question whether the return was made in time; but they do not lead to a quashing of the writ. The statute of limitations has run, and where a plaintiff in good faith has begun an action within time, and has failed to bring defendant into court because of mistake or default by the officer charged by law with the duty of serving the summons, the court should save the right of action if it can be done without working manifest injustice. Two methods are open—(1) to order a new summons to issue under section 53 of the Practice act of 1903, which may be done even after the limitation has expired (*Mut. Ben. Life Ins. Co.* v. *Rowand*, 26 *N. J. Eq.* 389; reversed on another point, 27 *Id.* 604); or to direct new service of the original summons under a practice analogous to enlarging the return day. *Kloepping* v. *Stellmacher*, 36 *N. J. L.* 176; *McCracken* v. *Richardson*, 46 *Id.* 50; *County* v. *Borax Company*, 68 *Id.* 273, 275; *Walnut* v. *Newlon*, 82 *Id.* 290, 293.

The abolition of a formal return day, an important function of which was to fix the time when declaration must be filed so as to require defendant to plead in a specified time thereafter, and the substitution of provisions that the com-

plaint shall be annexed to the summons and that defendant answer within twenty days after service on him of complaint and summons, and the new requirement that the sheriff shall serve those papers "forthwith," or within a reasonable time after their receipt, were never intended to abrogate the principle underlying the practice of extending the return day, that plaintiff should not lose his action begun in good season, by delay or error of the sheriff in getting the defendant into court. So, that while the necessity of extending the return day is eliminated, there is no reason why proper service of the original summons should not now be made, and the paper taken from the files for that purpose, or a new summons issued under section 53 of the Practice act. Either method is lawful, but the former seems to us the preferable one.

The motion to quash will be denied, but without costs, and a rule may be entered for a new summons or reservice of the old summons.